IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DAVID A. HENLEY,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

    Defendant.

No. C12-0065

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.    *Henley's Education and Employment Background* . . . . . . . . . . . . 5
     B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
         1.    *Henley's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 6
     C.    *Henley's Medical Records* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . 14
     B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . 16
         1.    *Fully and Fairly Developed Record* . . . . . . . . . . . . . . . . 16

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

     2.    ***Dr. Bieber's Opinions*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     3.    ***Credibility Determination*** . . . . . . . . . . . . . . . . . . . . . . . . 21

**VI.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**VII.  ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff David A. Henley on July 12, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Henley asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Henley requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On May 14, 2009, Henley applied for disability insurance benefits. In his application, Henley alleged an inability to work since April 25, 2006 due to injuries from a 1989 gunshot wound. Henley's application was denied on June 22, 2009. On November 3, 2009, his application was denied on reconsideration. On December 31, 2009, Henley requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 19, 2011, Henley appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing. Henley and vocational expert Carma A. Mitchell testified at the hearing. In a decision dated June 8, 2011, the ALJ denied Henley's claim. The ALJ determined that Henley was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Henley appealed the ALJ's

decision. On June 4, 2012, the Appeals Council denied Henley's request for review. Consequently, the ALJ's June 8, 2011 decision was adopted as the Commissioner's final decision.

On July 12, 2012, Henley filed this action for judicial review. The Commissioner filed an Answer on September 28, 2012. On October 31, 2012, Henley filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 28, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 19, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Henley's Education and Employment Background

Henley was born in 1962. He dropped out of high school in the eleventh grade. Later, he earned a GED. Henley testified that he is able to read, but has limited math skills. However, he stated that he could do "basic" math.

The record contains a detailed earnings report for Henley. The report covers the time period of 1979 to 2010. Prior to 1983, Henley earned less than $400.00. From 1983 to 2002, he earned between $1,264.00 (1992) and $40,688.00 (1999). He had no earnings in 2003. Between 2004 and 2007, Henley earned between $1,265.76 (2004) and $18,946.06 (2005). He has no earnings since 2008.

### B. Administrative Hearing Testimony

#### 1. Henley's Testimony

At the administrative hearing, Henley testified that he is unable to work because of back pain and stomach problems. Henley's attorney asked Henley to describe his functional abilities:

> Q:   How long in an eight-hour day are you able to walk at one time?
> A:   Maybe about 15 minutes, maybe I can walk 15 minutes if I walk slow.

| Q: | Okay. How many times a day would you be able to do that? |
|---|---|
| A: | Maybe once. |
| Q: | And then what, what do you have to do? |
| A: | Sit down for a while, stand up. I trade off. I sit down for a while, I stand up for a while. If I don't do very much in the day, I just do little household things and like that, it's not to bad. If I start doing chores, like raking, I can do it like 15 minutes, and you know, I've got to sit down for a while and stuff. |
| Q: | How long are you able to stand at one time? |
| A: | Oh, at the most maybe 30 or 40 minutes. |
| Q: | And then what do you have to do? |
| A: | Sit down for a while, or lay back in a chair or something. |
| Q: | How long are you able to sit at any particular time? |
| A: | I don't sit more than an hour. |
| Q: | What about lifting, what kind of lifting are you able to do at this point? |
| A: | I don't push it, they told me not to do heavy lifting. I bring the grocery [shopping] home, you know, maybe a bag of groceries and a gallon of milk, you know, maybe like 15 or 20 pounds. |

(Administrative Record at 29-30.) Henley also stated that it is "very difficult" for him to bend or stoop, and he is "very limited" in the ability to push, pull, and reach.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma A. Mitchell with a hypothetical for an individual who:

> could lift 20 pounds occasionally, 10 pounds frequently. He could only occasionally balance, stoop, crouch, crawl, or climb. I will limit him to superficial contact with the public, regular pace.

(Administrative Record at 40.) The vocational expert testified that under such limitations, Henley could perform the following work: (1) marker (2,000 positions in Iowa and

6

186,000 positions in the nation), (2) inserting machine operator (200 positions in Iowa and 16,000 positions in the nation), and (3) collator operator (500 positions in Iowa and 55,000 positions in the nation). The ALJ asked the vocational expert a second hypothetical which was identical to the first hypothetical except that the individual "could only be on his feet two hours total during a work day, he would require two or more absences per month and two or more unscheduled breaks per day."[2] The vocational expert testified that under such limitations, Henley would be precluded from competitive employment.

## C. Henley's Medical Records

On July 10, 2006, Henley was referred by Disability Determination Services ("DDS") to Dr. John D. Kuhnlein, D.O., for a consultative examination. In reviewing his medical history, Henley reported to Dr. Kuhnlein the following:

> Mr. Henley sustained a gunshot wound in two places in 1989. He was shot by the police while he was drunk apparently in an altercation. . . . He relates that part of his stomach was resected with an exteriorizing colostomy. He relates that because of the nature of the wounds, fragments were left in the abdomen. . . . He was later re-hospitalized for colostomy reversal later. He relates that he developed problems with his abdomen bulging, which he relates was full of fluid to the point that it was drained several times. . . . He relates that significant fluid has been drained from his abdomen over time, and it sounds as though he is describing ascites with drainage. He has had a total of three surgeries after the gunshot would, and he has been hospitalized several times for fluid removal, per his report.

> Mr. Henley relates that he had done fairly well, but his symptoms increased over the last six months very significantly. He has not seen any physicians since the surgeon in 2004. He is not treating the condition in any way

---

[2] Administrative Record at 41.

> now. He describes pain in the left side of his low back where
> the bullet was removed. He relates that he has symptoms in
> his left leg with activity. He gets a stabbing pain in the
> abdomen about two hours after he eats, and also says that he
> gets bulging in the abdomen. . . . His symptoms are
> aggravated with prolonged sitting, any activity more than
> about 15 minutes, or dietary fiber. He says that his symptoms
> are made better by lying down or changing positions.

(Administrative Record at 369-70). Henley described the following daily activities:
(1) eating breakfast but skipping lunch due to pain, (2) doing housework in 15 to 20 minute
increments, and (3) alternating between standing, sitting, and laying down throughout the
day. Upon examination, Dr. Kuhnlein determined that Henley had no handling
restrictions, and was capable of sitting, standing, walking, stooping, bending, crawling,
and kneeling on an as needed basis. Dr. Kuhnlein also found no upper extremity, lower
extremity, or grip restrictions. Lastly, Dr. Kuhnlein opined that Henley "should be
capable of using light vibratory or power tools on at least an occasional basis, based on this
examination."[3]

In June 2007, Henley began meeting with Dr. Robert E. Garrett, M.D.,
complaining of abdominal pain and constipation. Upon examination, Dr. Garrett
determined that Henley suffered from constipation and a small abdominal hernia.
Dr. Garret treated Henley with medication. In July 2007, Dr. Garrett noted that a CT scan
showed no evidence of a bowel obstruction. Dr. Garrett continued to treat Henley with
medication. In August 2007, Dr. Garrett noted that:

> [Henley] is continuing to complain of ongoing abdominal pain
> and when I try to redirect him to other issues, he perseverates
> on his concerns about the abdominal pain, making it
> impossible for him to work and impossible to play with his
> son. While discussing this with him, I made some suggestions

---

[3] Administrative Record at 372.

> about managing chronic pain and he suddenly became irate,
> got up, walked very close to me with a threatening expression,
> and started muttering obscenities at me. He then walked out
> of the clinic.

(Administrative Record at 431.) Dr. Garrett noted that Henley had previously been diagnosed with antisocial personality disorder by a different doctor. Dr. Garrett concluded that:

> I feel that this patient was threatening enough to me that I will
> not see him again under any circumstances. If he returns to
> this clinic, he will have to be assigned to another provider. I
> doubt, however, that he will do this.

(Administrative Record at 431.)

In January 2008, Henley met with Dr. Satish Rao, M.D., complaining of abdominal pain and constipation. Upon examination, Dr. Rao found no evidence of constipation. Dr. Rao was also unable to detect any "obvious" hernia. Dr. Rao concluded that Henley suffered from "chronic unexplained" abdominal pain. Dr. Rao opined that some of Henley's pain was "clearly" psychological in origin. Dr. Rao cautioned Henley against excessive eating and recommended that he cut down on the size of his meals to prevent "overdistention of the stomach and abdominal wall."[4]

In March 2008, Henley met with Dr. Todd Wiblin, M.D., regarding his difficulties with abdominal pain. Henley reported that his pain was a 6-7 on a scale of 1 to 10 with 10 being the most severe, and was located primarily in the upper epigastric area. Upon examination, Dr. Wiblin diagnosed Henley with unexplained chronic abdominal pain with a GERD component and aggravated by anxiety. Dr. Wiblin recommended medication as treatment. In June 2008, Henley met with Dr. Wiblin regarding foot, leg, and back pain. Dr. Wiblin treated Henley with pain medication. A CT scan from July 2008, showed

---

[4] Administrative Record at 415.

9

multi-level degenerative disc disease most prominent at L4-L5 with small left paracentral disc protrusion and suspicion for impingement upon the descending left L5 nerve root.

On August 26, 2008, Henley was referred by DDS to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. Upon examination, Dr. Stientjes diagnosed Henley with alcohol dependence in remission, major depressive disorder with anxiety symptoms, and anti-social personality traits. Dr. Stientjes opined that:

> [Henley] can understand and remember simple to mildly complex oral and written instructions, but at times will have to correct himself. He will require some reminders, cues, and prompts. Interactions can be generally acceptable but he may be quick to become irritable and sarcastic. He is not accustomed to following instructions or accepting supervision. There are antisocial personality disorder traits that have decreased in recent years. Safety judgment is minimally acceptable, but there is caution because of the pain medication he is on and his impulsive nature. Response to workplace changes will require more than typical support as he will resist change and pressure from external sources.

(Administrative Record at 556.)

On September 2, 2008, Dr. Myrna Tashner, Ed.D., reviewed Henley's medical records and provided DDS with a psychiatric review technique assessment for Henley. Dr. Tashner diagnosed Henley with major depressive disorder with anxiety symptoms, anti-social traits, and alcohol dependence in remission. Dr. Tashner determined that Henley had the following limitations: no restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tashner concluded that:

> Preponderance of [medical evidence of record] supported a non severe [medically determined impairment]. The allegations were credible to the extent supported by [the medical evidence of record] which didn't rise to listing level. . . . He appeared limited by his physical not mental

problems. He appeared capable of a variety of instructions and is able to manage his money, some properties, his son as well as some work in the family auto shop. He appeared to have adequate ability for concentration and pace from the mental perspective, [with] pain limiting which is discussed elsewhere in file. He didn't appear limited in social interactions of his choosing currently, tho[ugh] he did apparently have a prior [history with] law enforcement.

(Administrative Record 569.)

On September 9, 2008, Dr. Mary Greenfield, M.D., reviewed Henley's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Henley. Dr. Greenfield determined that Henley could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield also determined that Henley could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Greenfield found no manipulative, visual, communicative, or environmental limitations. Dr. Greenfield noted that:

> [Henley] reports he can walk 2-3 blocks, do dishes with difficulty, cooks meals while sitting, mows for 1 ½ hour[s] to do a small yard, does light housework and errands, laundry with sons help, and shops an hour daily while leaning on cart. . . . [Henley] does have physical [medically determined impairments] that could reasonably be expected to result in some functional limitations. His persistent reports of abdominal pain aren't supported by an extensive evaluation, eroding the credibility of the allegations to a large degree. . . . [Henley] is capable of the RFC provided.

(Administrative Record at 573.)

On June 22, 2009, Dr. James D. Wilson, M.D., reviewed Henley's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Henley. Dr. Wilson determined that Henley could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Henley could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations. Dr. Wilson concluded that:

> [Henley's] credibility is eroded by his conflicting stories relating to his symptoms and the fact that no medical problem has been found that would support his symptoms.

(Administrative Record at 610.)

On November 2, 2009, Dr. John Tedesco, Ph.D., reviewed Henley's medical records and provided DDS with a psychiatric review technique assessment for Henley. Dr. Tedesco diagnosed Henley with major depressive disorder with anxiety symptoms. Dr. Tedesco determined that Henley had the following limitations: no restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tedesco concluded that:

> Anxiety appears to be social and situational in nature. [Henley] was started on medication and follow up shows stable condition. . . . He is able to be sole care provider for his son, lives independently, drives, does meals, completes household tasks, and pays bills. He notes more limits from physical conditions. Considering the evidence in file, his condition appears non severe and would not impact work significantly . . . at this time.

(Administrative Record at 642.)

On June 4, 2010, at the request of Henley's attorney, Dr. Dale Bieber, M.D., a treating source, filled out a Fibromyalgia Medical Source Statement and Physical Medical Source Statement for Henley. On the fibromyalgia statement, Dr. Bieber diagnosed Henley with chronic pain syndrome, dysfunctional personality, depression, and social phobia. Dr. Bieber rated Henley's prognosis as poor. Dr. Bieber found that Henley had the following symptoms: nonrestorative sleep, chronic fatigue, frequent, severe headaches, numbness and tingling, anxiety, and depression. Dr. Bieber opined that Henley suffered from chronic and persistent pain that rates about 8 out of 10 on a scale of 1 to 10. Dr. Bieber identified movement/overuse, stress, and static positioning as factors which precipitate Henley's pain. Dr. Bieber determined that Henley could: (1) sit for 30 minutes at one time, (2) stand for 30 minutes at one time, (3) stand/walk for less than 2 hours in an eight-hour workday, and sit for at least 6 hours in an eight-hour workday. Dr. Bieber also opined that Henley would need to walk for 5 minutes every half hour during an eight-hour workday. Dr. Bieber further determined that Henley would need a 10-15 minute break "almost hourly" during an eight-hour workday. Lastly, Dr. Bieber indicated that Henley would be incapable of even low stress work and would have "persistent bad days."

On the physical medical source statement, Dr. Bieber diagnosed Henley with chronic back pain, chronic abdominal pain, depressive disorder, and hypertension. Again, Dr. Bieber opined that Henley's prognosis was poor. Dr. Bieber indicated that Henley's physical problems were affected by his psychological problems, including depression, somatoform disorder, anxiety, and personality disorder. Similar to the fibromyalgia statement, Dr. Bieber determined that Henley could: (1) sit for 30 minutes at one time, (2) stand for 30 minutes at one time, (3) stand/walk for less than 2 hours in an eight-hour workday, and sit for at least 6 hours in an eight-hour workday. Dr. Bieber also found that Henley would need to walk for 5 minutes every half hour during an eight-hour workday. Dr. Bieber further determined that Henley would need a 10-15 minute break "almost

hourly" during an eight-hour workday. As far as lifting, Dr. Bieber limited Henley to lifting 10 pounds or less. Dr. Bieber opined that Henley could occasionally twist, stoop, and climb stairs, but rarely crouch or climb ladders. Dr. Bieber concluded that in addition to his physical limitations, Henley's difficulty with dysfunctional personality, limited insight, distraction from persistent pain, depression, and anxiety, would affect his ability to work at a regular job on a sustained basis.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Henley is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

14

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Henley had not engaged in substantial gainful activity since April 25, 2006. At the second step, the ALJ

concluded from the medical evidence that Henley had the following severe impairments: degenerative disc disease, remote history of gunshot wound to the stomach, status post bilateral carpal tunnel release, fibromyalgia, depression, and anxiety. At the third step, the ALJ found that Henley did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Henley's RFC as follows:

> [Henley] had the residual functional capacity to perform light work . . . except he can only occasionally balance, stoop, crouch, climb, and crawl. He can have only superficial contact with the public. He can work at no more than a regular pace.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Henley was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Henley could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Henley was not disabled.

### B. Objections Raised By Claimant

Henley argues that the ALJ erred in three respects. First, Henley argues that the ALJ failed to fully and fairly develop the record with regard to his diagnosis of chronic pain disorder. Second, Henley argues that the ALJ failed to properly consider and evaluate the opinions of his treating doctor, Dr. Bieber. Lastly, Henley argues that the ALJ failed to properly evaluate his subjective allegations of disability.

### 1. Fully and Fairly Developed Record

Henley argues that the ALJ failed to fully and fairly develop the record with regard to his difficulties with chronic pain. Specifically, Henley argues that in making his disability determination, the ALJ failed to properly address Henley's chronic pain. Henley

maintains that this matter should be remanded for further development on the issue of chronic pain.

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ explicitly addressed Henley's difficulties with chronic pain:

> [Henley] was treated for chronic pain. Although he took strong medication, this regimen seemed to be stable. [Henley] underwent successful right hand carpal tunnel surgery. [He] expressed interest in returning to work in January 2009, stating he was enthusiastic about how good he felt. However, when discussing his back pain, [Henley's] physician mentioned taking him off narcotics in the future. [Henley] 'promptly got up and said he was leaving.' [Henley] indicated, 'if he was not going to get his narcotics, he might as well not even bother coming to the treating physician anymore.' At a follow up in August 2009, [Henley] was noted to have managed without any medication for the past five months. [Henley] complained of vague diffuse pain. . . . Dale Bieber, M.D., noted [Henley] 'cannot state any specific dysfunction that he has, just pain.' Significantly, Dr. Bieber noted that [Henley] lived effectively without strong pain medication in the past, but [he] continued to request narcotics as he felt his 'quality of life is better.'

> Later, [Henley] specifically asked for hydrocodone and 'had
> a couple of spells of temper' when it was denied. Treatment
> notes also indicated [Henley] reported he 'misplaced' his
> methadone and reportedly was 'very vague about where it
> went.' Dr. Bieber noted during his examination that [Henley]
> seemed to anticipate that he was going to hurt with touch
> almost anywhere in the body. Similarly, in March 2010,
> [Henley] was unable to describe where or what specifically his
> symptoms emanated from.

(Administrative Record at 14.) Having reviewed the entire record, the Court finds that the

ALJ fully and fairly developed the record with regard to Henley's medical records. *See*

*Cox*, 495 F.3d at 618. Moreover, the ALJ explicitly addressed Henley's difficulties with

chronic pain and explained his reasons for not finding Henley's chronic pain to be a severe

impairment.[5] Even if inconsistent conclusions could be drawn on this issue, the Court

upholds the conclusions of the ALJ because they are supported by substantial evidence on

the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. Bieber's Opinions*

Henley argues that the ALJ failed to properly evaluate the opinions of his treating

physician, Dr. Bieber. Specifically, Henley argues that the ALJ's reasons for discounting

Dr. Bieber's opinions are not supported by substantial evidence on the record. Henley

concludes that this matter should be remanded for further consideration of Dr. Bieber's

opinions.

An ALJ is required to "assess the record as a whole to determine whether treating

physicians' opinions are inconsistent with substantial evidence on the record." *Travis v.*

*Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The

opinion of a treating physician:

---

[5] *See* Administrative Record at 14.

should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ discussed Dr. Bieber's opinions:

> Dr. Bieber's opinions regarding functional limitations have been given little weight, as they are not consistent with the medical evidence as a whole. Dr. Bieber appeared to rely primarily on [Henley's] subjective complaints, rather than objective medical testing/techniques. [Henley's] subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of [his] conditions. As such, great weight cannot be given to Dr. Bieber's medical source statement opinions.

(Administrative Record at 15.) Additionally, the ALJ discussed Dr. Bieber's treatment notes which were inconsistent with the opinions provided in the medical source statements. The ALJ pointed out that:

> Dale Bieber, M.D., noted [Henley] 'cannot state any specific dysfunction that he has, just pain.' Significantly, Dr. Bieber noted that [Henley] lived effectively without strong pain medication in the past, but [he] continued to request narcotics as he felt his 'quality of life is better. . . .' Dr. Bieber noted during his examination that [Henley] seemed to anticipate that he was going to hurt with touch almost anywhere in the body. Similarly, in March 2010, [Henley] was unable to describe where or what specifically his symptoms emanated from.

(Administrative Record at 14.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Bieber. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Bieber's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Credibility Determination*

Henley argues that the ALJ failed to properly evaluate his subjective allegations of disability. Henley maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Henley's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski

factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In addressing Henley's credibility, the ALJ made the following observations:

> After careful consideration of the evidence, the undersigned finds that [Henley's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Henley's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

> [Henley] experiences some symptoms and limitations; however, the record does not fully support the severity of [his] allegations. [Henley] was able to engage in activities of daily living that are more diverse than expected, given his allegations of disabling symptoms. . . . [Henley's] complaints of pain were general and often he was found to be doing well.

[He] frequently requested narcotic pain medication, despite living effectively without complaint with no medication at all for five months.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Henley's] allegations of disabling symptoms. The consultative examination does not support greater limitations than those described in the residual functional capacity above. [Henley] does experience some levels of symptoms and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 16.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Henley's treatment history, medical history, functional restrictions, medication use, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Henley's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Henley's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI.  CONCLUSION

The Court finds that the ALJ fully and fairly developed the record in this matter, including the issue of Henley's diagnosis of chronic pain.  The Court also finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Bieber.  Lastly, the Court finds that the ALJ properly determined Henley's credibility with regard to his subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this _30th_ day of ___April___, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA